**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| JAMES AND SUSAN KONDRAT, individually and on behalf of others similarly situated, | ) ) ) ) | FILED: JUNE 5, 2008<br>08 CV 3244    JH<br>JUDGE DARRAH |
| Plaintiffs, | ) ) | No.   MAGISTRATE JUDGE COLE |
| v. | ) ) | |
| LIFELOCK, INC. | ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

Plaintiffs James and Susan Kondrat ("Plaintiffs") individually and on behalf of others similarly situated, file this Class Action Complaint against defendant LifeLock, Inc. ("LifeLock" or "Defendant"), and allege as follows:

## INTRODUCTION

1.  This class action is brought on behalf of Plaintiffs and others similarly situated who purchased Defendant's LifeLock™ identity theft protection.

2.  Defendant proclaims itself the "industry leader" in proactive identity theft protection, claims that "no one else does because no one else can,"[1] and further promises a $1 million guarantee that its clients' identities will remain safe.

3.  However, Defendant, in truth and fact, provides nothing of substance to justify the fees it collects from its customers. Instead, Defendant fails to disclose to customers material facts, such as that many forms of identity theft are not covered by its services; for those forms of theft that are covered, its customers are only offered partial protection; and its $1 million "guarantee" is subject to such limitations as to be illusory when its services fail.

---

[1]  *See e.g.* www.lifelock.com (last visited June 2, 2008)

1

## PARTIES

4. Plaintiffs James and Susan Kondrat are citizens of Illinois, being natural persons residing in Crystal Lake, Illinois. Plaintiffs first subscribed to Defendant's services in May 2007.

5. Defendant LifeLock, Inc. is a citizen of both Delaware and Arizona, being a corporation incorporated under the laws of Delaware, with its principal place of business in Tempe, Arizona.

## JURISDICTION AND VENUE

6. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d) because at least one member of the putative class is a citizen of a state other the citizenship of LifeLock, there are more than 100 Class Members, and the damages suffered and sought to be recovered herein total, in the aggregate, in excess of $5,000,000, exclusive of interest and costs. Jurisdiction over Defendant is proper because it does engage in, continuous and substantial business within the state of Illinois.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because acts and/or omissions giving rise to Plaintiffs' claims occurred in this District and Defendant has had continuous and systematic contacts in this District by actively doing business here.

## SUBSTANTIVE ALLEGATIONS

8. LifeLock was established in 2005 to purportedly protect the identity of its customers from theft. It charges approximately $10.00 a month for its services, and currently has over one hundred thousand customers in each of the fifty states.

9. The demand for a service that actually protects a person's identity from theft is very high, as identity theft can be costly. Identity theft can take many forms, and includes any

use of personal identifying information, like a person's Social Security number or credit card numbers, without permission to commit fraud or other crimes.[2] Thus, identity theft can include simple theft of a credit card number or more elaborate and complete usurpation of a person's identity.

10. Defendant markets its theft identity protection services through uniform, scripted television, print and internet ads, the expectation of which to the reasonable consumer is that Defendant is providing guaranteed identity theft protection.[3]

11. In truth and fact, Defendant fails to inform its customers the following material facts:

> (a) LifeLock can't even protect the theft of Todd Davis' identity, which has been stolen over twenty times, including the successful use of his stolen identity in obtaining a loan, all while his identity was purportedly protected by LifeLock;
>
> (b) (1) LifeLock only provides services that are already free to its customers such as once a year obtaining a credit report from the big three credit agencies or placing and subsequently renewing a 90 day fraud alert with those same agencies, requesting removal from pre-approved credit card lists, and requesting removal from junk-mail lists;

---

[2] *See* www.ftc.gov/bcp/edu/microstates/consumers/about-identity-theft.html (last visited June 2, 2008)

[3] Defendant's standard marketing usually includes: (a) Todd Davis, the Chief Executive Officer and co-founder of LifeLock, announcing through a bullhorn, publishing on a mobile billboard and distributing on handbills his social security number to prove just how safe a person's identity can be with LifeLock. 'So why publish my social security number? Because I'm absolutely confident LifeLock is protecting my good name and personal information, just like it will yours'; (b) LifeLock's proclamation that it is the industry leader in *proactive* identity theft protection and offers a proven solution that *prevents* someone's identity from being stolen before it happens; (c) Lifelock is an industry pioneer that actively polices and protects customer identities from all compromise and theft before it happens; (d) LifeLock is led by experienced and successful entrepreneurs and industry experts; (e) LifeLock guarantees its service up to $1 million, and as part of this guarantee will provide at no cost to the customer the best lawyers and other professional staff to work for them to get their good name back if their identity is compromised or stolen.

(2) There are two substantial limitations to using the already-available fraud alerts in this manner. First, fraud alerts do not protect against identity theft involving the use of existing accounts, like the use of a stolen credit card number or similarly common types of identity theft. Second, a creditor is only "alerted" if they refer to a person's credit report in the course of business. Many creditors never consult a credit report prior to issuing credit and the Defendant does nothing to supplement the limitations of the "fraud alert" system already in place;

(3) The use of a rolling 90 day fraud alert is a misuse of the fraud alert system which is only to be used when a person has a good faith suspicion that they have been or are about to be a victim of fraud or related crime, including identity theft. Accordingly, Lifelock requires that its customers lie in order to obtain perennial renewal of a fraud alert;

(c) Lifelock offers nothing new by way of identity protection to its customers, and only acts as a middle-man for long-existing, free services.

(d) (1) Co-founder and former LifeLock CEO Robert Maynard stepped down as CEO when it was learned Maynard had been investigated and prosecuted by the Federal Trade Commission for fraud and misrepresentation in operation of a credit counseling business, and as a result Maynard was banned for life from advertising, promoting, offering for sale, selling, performing or distributing any product or service relating to credit improvement services;

(2) That Maynard had stolen his own father's identity and obtained a credit card on which he ran up over $100,000;

(3) That Maynard came up with the idea for LifeLock while he was in jail for not paying a $16,000 casino marker and was trying to figure out how to pay that off; and

(e) (1) The $1 million guarantee does not cover any losses directly tied to identity theft, such as the money taken and owing in the course of the theft. All Defendant will do is pay is for select professional assistance and cure any failure or defect in its Service;

4

(2)   The promised team of the best lawyers and other professional staff also is not provided. Defendant reserves to itself the right to decide if its customer needs any professional assistance and who these professionals will be, and will not reimburse its customers for any such services they have already paid;

(3)   The $1 million guarantee only extends to those thefts that are due to a failure or defect in Defendant's Service. The guarantee does not cover the vast array of thefts that would not be flagged by the fraud alert set up in the customer's name, such as credit card theft. Rather, the guarantee only covers Defendant's failure to carry out its clerical tasks, like timely requesting a fraud alert.

12.    As a result of the above, LifeLock's services are illusory and cover a small segment – if any – of potential identity theft, do nothing to protect one's "good name," and do not even fully protect the credit or finances of its customers from such theft. Indeed, Defendant would not legally or technically be capable of providing the extent of coverage.

13.    Accordingly, the reality of Defendant's "system" falls short of Defendant's promise. At most, Defendant contacts Equifax, Experian and Transunion and places a "fraud alert" on its customers' behalf, and submits requests to existing agencies that its customers' names be removed from pre-approved credit-card and junk mail lists. In other words, Defendant does little more than set up credit monitoring by existing credit agencies, and only does what any consumer can do for themselves for free (without disclosing this to consumers).

14.    Moreover, form documents sent to Defendant's customers after enrollment are in furtherance of and continue the fraudulent omission of material terms about the true nature of its service and its guarantee. When the first year of service is up, and it is time to renew, Defendant again does nothing to make clear the true nature of its services and guarantee. Rather, Mr. Davis personally addresses Defendant's customers by email or letter when it is time to renew:

5

> "As your anniversary with LifeLock draws near, I want to take the opportunity to personally thank you for allowing LifeLock to protect your good name. While identity theft approaches its own anniversary as the number one consumer complaint for the eighth straight year, you can rest assured that we're working hard to keep you safe from the latest identity threats."

15. Defendant's omissions were material to the contract and to Plaintiff and the Class paying fees for Defendant's identity theft protection services because without those purported "services" there is nothing to pay for.

16. Plaintiffs subscribed to Defendant's service in May 2007 and renewed in May 2008. Plaintiffs were not aware of the substantial limitations on the ability of Defendant to protect their identities, and the true nature of the services and guarantee when first subscribing or renewing.

17. Defendant's Terms and Conditions for enrollment are unilateral and were drafted to protect Defendant at the expense of its customers. The Terms and Conditions contain unconscionable clauses such as making the venue for all claims on the $10 a month fee for service in Arizona though the service is sold throughout the country, and a clause prohibiting any participation in class wide arbitration.

### ARIZONA'S SUBSTANTIVE LAW APPLIES TO THE PROPOSED NATIONWIDE CLASS

18. Arizona's substantive laws apply to the proposed Nationwide Class, as defined herein, because Plaintiffs properly bring this Complaint in this District. Further, Defendant's choice of law provision in its contract provides that Arizona law applies to all disputes:

> Governing law: This agreement and any Service provided hereunder will be governed by the laws of the state of Arizona, without regard to any Arizona laws that would direct the choice of another state's laws and, where applicable, to be governed by the federal laws of the United States.

19. Arizona's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Nationwide Class under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution. Arizona has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiffs and all Class members, thereby creating state interests that ensure that the choice of Arizona state law is not arbitrary or unfair.

20. Defendant's United States headquarters and principal place of business is located in Arizona. LifeLock also conducts substantial business in Arizona, and therefore Arizona has an interest in regulating Defendant's conduct under its laws. Defendant's decision to reside in Arizona and avail itself of Arizona's laws renders the application of Arizona law to the claims herein constitutionally permissible.

21. Arizona is also the location of where a significant number of Class members were injured by virtue of the misconduct alleged herein. A substantial number of members of the proposed Nationwide Class also reside in Arizona and subscribed to LifeLock's services in Arizona.

22. Arizona is also the State from which Defendant's alleged misconduct emanated. This conduct similarly injured and affected Plaintiffs and Class members residing in the United States. For instance, Defendant's marketing efforts relating to LifeLock's identity protection services were created and orchestrated from its headquarters in Arizona. More specifically, Arizona has the following significant contacts to the claims of Plaintiffs and Class members:

    a. LifeLock's Arizona office serves as the headquarters for its marketing and sales in the United States and provides all sales support;

      b.    Upon information and belief, all corporate decisions regarding identity protection services, and the representations and acts of concealment which are the subject of this lawsuit were directed by, or emanated from, LifeLock representatives working in Arizona or directly reporting to superiors situated in Arizona;

      c.    Several different teams of LifeLock employees who were involved in and are knowledgeable about the marketing and advertising of LifeLock's identity protection services, including LifeLock's product development and marketing groups, are located in Arizona;

23. The application of Arizona's laws to the Nationwide Class is also appropriate under Arizona's choice of law rules because Arizona has significant contacts to the claims of the Plaintiffs and the proposed Nationwide Class, and Arizona has a greater interest in applying its laws here than any other interested state.

24. In the alternative, the Court may apply the substantive law of the States where the named Plaintiffs reside and additional states with substantially similar laws: Illinois, Arizona, California, Florida, Michigan, Missouri, New Jersey, North Carolina, and Washington.

## CLASS ACTION ALLEGATIONS

25. Plaintiffs bring this action on their own behalf and as a Class Action pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following proposed class:

    **a. The (b)(2) Injunctive Relief Class consists of:**

    All persons who purchased theft identity protection services from LifeLock.

    **b. The (b)(3) Class consists of:**

    All persons who purchased theft identity protection services from LifeLock.

    **Alternative (b)(3) Class consists of:**

> All persons who purchased theft identity protection services from LifeLock in the states of Illinois, Arizona, California, Florida, Missouri, New York, New Jersey, North Carolina, and Washington.

Upon completion of discovery with respect to the scope of the Class, Plaintiff reserves the right to amend the Class definition. Excluded from the Class are Defendant, its parents, subsidiaries and affiliates, their directors and officers, and members of their immediate families. Also excluded from the Class are the Court, the Court's spouse, all persons within the third degree of relationship to the Court and its spouse, and the spouses of all such persons, and the attorneys in this case.

26. <u>Numerosity</u>: The members of the Class are so numerous and geographically diverse that joinder of all of them is impracticable. While the exact number and identities of members of the Class are unknown to Plaintiff at this time Plaintiff believes that Defendant has approximately 1 million subscribers.

27. <u>Commonality</u>: There are questions of fact and law common to members of the Class that predominate over any questions affecting any individual members including, *inter alia*, the following:

   a. Whether Defendant omitted to disclose material facts about its services and guarantee;

   b. Whether Defendant's conduct violates Arizona's consumer protection act; or alternatively, the consumer protection acts of several states;

   c. Whether Defendant was unjustly enriched;

   d. Whether declaratory relief is appropriate for, *inter alia*, the provision for mandatory arbitration and a class action ban in Defendant's Terms and Conditions.

28.   <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the other members of the Class in that Plaintiffs allege a common course of conduct and representations by Defendant towards members of the Class.  Plaintiffs, like other members of the Class, were injured by this common course of conduct, and there is no antagonism or material factual variation between Plaintiffs' claims and those of the Class.

29.   <u>Adequacy</u>:  Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' claims are coextensive with, and not antagonistic to, the claims of the other members of the Class.  Plaintiffs are willing and able to vigorously prosecute this action on behalf of the Class, and Plaintiffs have retained competent counsel experienced in litigation of this nature.

30.   Plaintiffs bring this action under Rule 23(b)(3) because common questions of law and fact predominate over questions of law and fact affecting individual members of the Class. Indeed, the predominant issues in this action are whether Defendant misrepresented its services and guarantee.  In addition, the expense of litigating each Class member's claim individually would be so cost prohibitive as to deny Class members a viable remedy.  Certification under Rule 23(b)(3) is appropriate because a class action is superior to the other available methods for the fair and efficient adjudication of this action, and Plaintiffs envision no unusual difficulty in the management of this action as a class action.

31.   Plaintiffs also bring this action under Rule 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to all members of the Class, thereby making final injunctive relief concerning the Class as a whole appropriate.  In the absence of appropriate injunctive relief, Defendant will continue to recruit new subscribers and retain old subscribers based on its misrepresentation and omissions.  Defendant's uniform conduct towards Plaintiffs and the other members of the Class makes certification under Rule 23(b)(2) appropriate.

## CAUSES OF ACTION

### COUNT I
### [Violation of Arizona's Consumer Fraud Act]

32. Plaintiffs reallege and incorporate the preceding and subsequent paragraphs as if fully set forth herein.

33. The Terms and Conditions applicable to Defendant's services provide that it is governed by Arizona law.

34. Defendant made use of deception, false promises, misrepresentations and material omissions in the course of its sale and marketing of its services and guarantee in violation of the Arizona Consumer Fraud Act, ARIZ. REV. STAT. § 44-1522(A).

35. Defendant's deception and material omissions include, but are not limited to:

   a. That all of its services are already available to the consumer and are otherwise available for free;

   b. The real extent and scope of the protection offered by Defendant's services;

   c. The extensive limitations and narrow scope of guarantee which negates the realized value of Defendant's $1 million guarantee to nearly zero;

   d. Not informing consumers they were required to lie to obtain the perpetually renewed "fraud alerts" that are central to the limited service provided by Defendant;

   e. Not informing consumers that their credit ratings were at risk of actually being harmed by Defendant's services; and

   f. The fact that Mr. Davis' identity was repeatedly stolen, including the theft of money under his identity, notwithstanding Defendant's services.

36. As a result of Defendant's deception and material omissions Plaintiffs and members of the class subscribed and/or re-subscribed to Defendant's services.

37. As a result of Defendant's deception and material omissions Plaintiffs and members of the class were otherwise injured.

## COUNT II
### [Alternative - Violation of Substantially Similar Consumer Protection Laws]

38. Plaintiffs reallege and incorporate the preceding and subsequent paragraphs as if fully set forth herein.

39. In the event that the unconscionable and illegal provisions of the Terms and Agreement are not severable from the Terms and Agreement or the choice of law provision is otherwise not applicable or enforceable, Plaintiffs and the Class seek relief under the consumer protection statutes of the several states.

40. Defendant's deception and material omissions as described above violate the state consumer protection statutes listed below. As a direct result of Defendants' deception and material omissions, Plaintiffs and members of the Class were injured when they subscribed and/or re-subscribed to Defendant's service and as may otherwise be determined.

41. Defendant engaged in unfair competition or unfair and/or deceptive acts or practices in violation of the following Consumer Protection Acts:  (a) Illinois, 815 ILCS 505/2, *et seq.*, (b) Arizona, ARIZ. REV. STAT. § 44-1522(A), *et seq.*, (c) California, CAL. BUS. & PROF. CODE § 17200, *et seq.*, (d) Florida, FLA. STAT. ANN. § 501.201, *et seq.*, (e) Michigan, MICH. COMP. LAWS § 445.901, *et seq.*, (f) Missouri, MISSOURI MERCHANDISING PRACTICES ACT, § 407.010 *et seq.*; (g) New Jersey, N.J.S.A. § 56:8-1 *et seq.*, (h) North Carolina, N.C. GEN. STAT. § 75-1.1, *et seq.*, and (i) Washington, WASH. REV. CODE § 19.86.010, *et seq.*

42. The unfair and deceptive acts and practices of Defendant directly, foreseeable, and proximately caused or will cause damages and injury to Plaintiffs and the Class.

43. Defendant's deception and material omissions constitute acts, uses, or employment by Defendant of unconscionable commercial practices, deception, fraud, false pretenses, misrepresentations, and the knowing concealment, suppression or omission of material facts with the intent that others rely upon such concealment, suppression, or omission of material facts in connection with the sale of Defendant's services in violation of the consumer protection statutes listed above

44. Plaintiffs and the Class justifiably relied on Defendant's deception and material omissions.  By reason of the unlawful acts engaged in by Defendant, Plaintiffs and the Class have suffered ascertainable loss and damages.  As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs and the Class were damaged by subscribing and/or re-subscribing for Defendant's services.

45. As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs and members of the Class are entitled to compensatory damages, enhancement of damages as may be available, attorneys' fees and costs of suit.

## COUNT III
## [Unjust Enrichment]

46. Plaintiffs reallege and incorporate the preceding and subsequent paragraphs as if fully set forth herein.

47. Plaintiffs and the Class have conferred benefits on Defendant by paying for subscription to Defendant's services.

48. Defendant has knowingly and willingly accepted these benefits from Plaintiff and the Class.

49. Under the circumstances, it is inequitable for Defendant to retain these benefits at the expense of Plaintiff and the other members of the Class.

50. Defendant has been unjustly enriched at the expense of and detriment of Plaintiff and the Class by wrongfully collecting money to which Defendant, in equity, is not entitled.

51. Plaintiffs and members of the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

52. As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and members of the Class have suffered injury and are entitled to reimbursement, restitution and disgorgement from Defendant of the benefits conferred by Plaintiff and the Class.

53. Plaintiffs and the Class have no adequate remedy at law.

## COUNT IV
### [Declaratory Judgment]

54. Plaintiffs reallege and incorporate the preceding and subsequent paragraphs as if fully set forth herein.

55. There is an actual controversy between Defendant and the Class concerning the validity of the provision for mandatory arbitration and the ban on class arbitration in Defendant's Terms and Agreements.

56. Pursuant to 28 U.S.C. § 2201 this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

57. Defendant's Terms and Conditions prohibit class actions, even in arbitration, and thus foreclose the only meaningful avenue by which to obtain relief as, for example, the individual dollar amounts in controversy for each class member are greatly swamped by the cost of pursuing an action against Defendant.

58. Under applicable law, Defendant's contract, and in particular, its ban on class arbitration is unconscionable and unenforceable.

59. Defendant may wrongfully deny substantive and procedural justice through use of these terms of its Terms and Conditions.

60. Accordingly, Plaintiffs seek a declaration that these provisions are void, invalid and not enforceable.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief and judgment against Defendants as follows:

    a. For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiffs and their legal counsel to represent the Class;

    b. Awarding reimbursement, restitution, disgorgement from LifeLock of the benefits conferred by Plaintiffs and the Class;

    c. For pre- and post-judgment interest to the Class, as allowed by law;

    d. For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary benefits are obtained on behalf of the Class; and

    e. Granting such other and further relief as is just and proper.

## JURY DEMAND

Plaintiffs, individually and on behalf of the Class, hereby demand a trial by jury on all issues so triable.

DATED: June 5, 2008                           Respectfully submitted,

**JAMES AND SUSAN KONDRAT,**
**Class Plaintiffs,**

By: ___s/Paul M. Weiss_____
       One of Their Attorneys

Paul M. Weiss
William M. Sweetnam
George K. Lang
Eric C. Brunick
**FREED & WEISS LLC**
111 West Washington Street, Suite 1331
Chicago, Illinois  60602
(312) 220-0000

Jonathan Shub
Scott George
**SEEGER WEISS LLP**
1515 Market Street, Suite 1380
Philadelphia, PA 19102

James E. Cecchi
Lindsey H. Taylor
**CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN**
5 Becker Farm Road
Roseland, New Jersey 07068

Richard J. Burke
**RICHARD J. BURKE LLC**
1010 Market Street, Suite 650
St. Louis, Missouri 63101

**Attorneys for Plaintiffs**
 **and Proposed Class**